1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 17, 2022

SEAN F. McAVOY, CLERK

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

| | |
|---|---|
| BLANCA J.,<br><br>                              Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                              Defendant. | NO:  4:21-CV-5044-RMP<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

13

14

15

16

17

18

        BEFORE THE COURT, without oral argument, are cross-motions for

summary judgment from Plaintiff Blanca J.[1], ECF No. 12, and Defendant the

Commissioner of Social Security ("Commissioner"), ECF No. 13.  Plaintiff seeks

judicial review, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), of the

Commissioner's denial of her claim for Social Security Disability Insurance Benefits

("DIB") and Social Security Income ("SSI") under Titles II and XVI of the Social

19

20

21

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first
name and last initial.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

Security Act (the "Act").  *See* ECF No. 12 at 1.  Having considered the parties'

motions, the administrative record, and the applicable law, the Court is fully

informed.  For the reasons set forth below, the Court grants summary judgment in

favor of the Commissioner.

## BACKGROUND

### General Context

Plaintiff applied for DIB and SSI on approximately January 17, 2018, when

she was 46 years old.  Administrative Record ("AR")  298–312.[2]  Plaintiff alleged a

disability onset date of August 10, 2017, and maintained that she was unable to

function and/or work due to severe anxiety, post-traumatic stress disorder, sciatica,

chronic back pain, restless leg syndrome, depression, high blood pressure,

fibromyalgia, carpel tunnel, concentration issues, and insomnia.  AR 294.  The

application was denied initially and upon reconsideration, and Plaintiff requested a

hearing.  *See* AR 165.

On December 20, 2019, Plaintiff appeared at a hearing, without a

representative, before Administrative Law Judge ("ALJ") Mark Kim in Richland,

Washington.  AR 35.  Plaintiff indicated that she had recently found counsel to

represent her and that she would like a three-month continuance of the hearing.  AR

---

[2] The AR is filed at ECF No. 10.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

38.  On June 17, 2020, ALJ Kim resumed the hearing from Spokane, Washington. AR 49.  Plaintiff appeared telephonically, represented by counsel David Lybbert. AR 46, 49.  The ALJ also heard telephonically from psychologist Ira Hymoff, PhD. and Vocational Expert ("VE") Patricia Ayerza.  AR 48–49.  Plaintiff responded to questions from ALJ Kim, Dr. Hymoff, and counsel.

Plaintiff, who was 49 years old at the time of the hearing, testified that she had completed her education through high school.  AR 54.  Plaintiff was living with a roommate in Richland.  Plaintiff indicated that her treatment provider recently had rescheduled a medical procedure due to Plaintiff's high blood pressure.  AR 54–55. Plaintiff also testified that she was receiving regular mental health counseling with Dr. Laurie Zimmerman and was taking medication to treat anxiety.  AR 61. However, Plaintiff asserted that one of her medications, gabapentin, caused weight gain and drowsiness.  AR 56.  Plaintiff stated that she was not using any street drugs. AR 61.

Plaintiff testified that she does not drive and uses the People for People medical transportation service to get to appointments.  AR 58.  Plaintiff relies on a roommate, friend, or advocate for transportation to go shopping.  AR 59.  Plaintiff stated that she does not like to leave her residence and goes out approximately once every couple of weeks.  AR 59.  Plaintiff mainly interacts with her roommate and occasionally goes to church.  AR 59–60.  Plaintiff has spent periods of time living at

1    a residential facility called "Transitions" that Plaintiff described as a place where she

2    voluntarily went to live for a few days to clear and "reset" her mind.  AR 60.

3         The ALJ asked Dr. Hymoff for his assessment addressing Plaintiff's severe

4    mental health impairments, any other impairments Dr. Hymoff considered, and any

5    functional limitations, based on his review of the record in addition to the

6    information that Dr. Hymoff requested of Plaintiff during the hearing.  AR 60.  Dr.

7    Hymoff testified that he did not view the record as "very complete," but based on

8    what he could review, he found four diagnoses mentioned in the record: (1) a

9    trauma-related disorder or PTSD; (2) a depressive disorder of some kind, or

10   dysthymic disorder; (3) an anxiety disorder of some kind, such as an unspecified or

11   generalized anxiety disorder, and panic and agoraphobia; and (4) somatic disorder.

12   AR 60–61.  Dr. Hymoff testified that the fourth diagnosis, somatic disorder was

13   merely mentioned but not well documented in the record, while the other three

14   diagnoses were better documented.  AR 61.

15        Dr. Hymoff testified that based on the information he had available to him, he

16   would assess Plaintiff's ability to understand and apply information as moderately

17   limited.  AR 62.  Dr. Hymoff elaborated that he was missing approximately the

18   eighteen months of treatment records immediately preceding the hearing.  AR 63.

19   Likewise, Dr. Hymoff assessed Plaintiff's ability to interact with others as

20   moderately limited, although he speculated that her ability "might well be marked,

21

but I don't have enough information." AR 62. Dr. Hymoff also assessed as moderately limited Plaintiff's abilities to concentrate, persist, maintain pace, adapt, and manage herself. AR 62. Dr. Hymoff recommended that Plaintiff be limited to simple, repetitive tasks; occasional or no contact with the public; occasional contact with supervisors and coworkers; and only occasional or very modest changes in work tasks. AR 62–63. Dr. Hymoff agreed with Plaintiff's counsel that Plaintiff likely would have a problem with absenteeism from work due to "her lack of involvement outside of her own residence." AR 64. Dr. Hymoff testified that he could not offer an opinion of a specific number of days Plaintiff is likely to miss from work each month without treatment records from over a year prior to the hearing. AR 65. Accordingly, Plaintiff's counsel requested that the ALJ keep the record open to incorporate updated treatment records. AR 65.

Plaintiff testified that she continues to experience lower back pain, but she fears surgery and needles, so she has not resorted to either the surgery or the injections that her medical providers have offered for relief. AR 67. Plaintiff further testified that she had been living with her current roommates for approximately one month and a half before the hearing and had lived with other roommates before that. At her previous residence she stayed in her room except when she needed to be in other areas of the house for chores. AR 68. Plaintiff stated that food was provided

for her, but Plaintiff took care of her own personal hygiene, albeit slowly due to sciatica. AR 68, 73.

Regarding Plaintiff's mental health, Plaintiff testified that she had suffered from anxiety for at least sixteen years and experienced more intense symptoms in unfamiliar situations and when interacting with strangers or with people who she has not seen in a long time. AR 69. Plaintiff stated that she sometimes experiences panic attacks when she leaves the house, such as going to the grocery store. AR 71. Plaintiff stated that she was taking medication to treat her anxiety and receiving treatment from Dr. Zimmerman. AR 71.

Plaintiff stated that she experiences nightmares as a symptom of her PTSD and that she experienced stress related to a past traumatic experience or experiences because the perpetrators had not been caught. AR 72. At the hearing, Plaintiff said that she had been raped twice while she was sleeping. AR 76; *but see* AR 1167–68 (indicating that Plaintiff reported to her treatment provider trauma in the form of being stabbed eleven times in November 2013 and a gang rape in her room at a group home in August 2019); 95 (indicating that police had informed hospital personnel with respect to an alleged gang rape in 2017 that they could not substantiate Plaintiff's allegation). Plaintiff stated that when she is feeling stressed, she sleeps or watches television to distract herself from her negative thoughts. AR 74. Plaintiff reported that she had thought about suicide within the two months

before the hearing.  AR 76–77.  Plaintiff also claimed to have difficulty focusing but maintained that she can finish any task that she starts, such as making her bed.  AR 77.  Plaintiff testified that she requires reminders to remember appointments, and two or more days per month her anxiety level is so high that she cancels outings such as physical therapy appointments.  AR 78.

The ALJ posed several hypothetical scenarios for the VE to consider in determining whether there are jobs available that Plaintiff could perform.  AR 78–85.  The ALJ first asked the VE to consider an individual of Plaintiff's age and education, with past work performing light work as a choreographer for dancers over the age of eighteen, who cannot climb ladders, ropes or scaffolds, who can only occasionally climb flights of stairs, stoop, kneel, or crouch.  AR 82.  In this first scenario, the ALJ further limited the hypothetical worker to simple, routine, and unskilled work tasks, with only occasional and simple changes in the work setting, proximity but no interaction with the public, and only occasional and superficial interaction with coworkers.  AR 82.  The VE responded that a worker with those restrictions could not perform Plaintiff's past relevant work as a choreographer but could perform other jobs in the national economy consisting of light, unskilled work, including hotel/motel housekeeper, routing clerk, and mailroom sorter.  AR 82–83.  The VE clarified that she selected the jobs with the least amount of contact with other people according to the Dictionary of Occupational Titles ("DOT").  AR 83.

1    The ALJ posed a second hypothetical with the same parameters as the first,

2    except considering a person who would miss at least three days of work per month

3    due to mental impairments.  AR 83.  The VE responded that a person who misses

4    more than sixteen hours of work per month on an ongoing, unexcused basis is not

5    competitive for unskilled employment.  AR 83–84.

6    Plaintiff's counsel asked the VE to add to the first hypothetical scenario that

7    the individual is unable to perform routine tasks without supervision, at least thirty

8    to forty percent of the time, and is unable to adapt to any changes in her routine or

9    maintain appropriate behavior.  AR 84.  Plaintiff's counsel asked the VE whether

10    she agreed that these additional limitations would preclude the available jobs that the

11    VE had identified.  AR 84.  The VE responded that the jobs would accommodate an

12    inability to adapt to changes in routine, but the other limitations would rule out

13    competitive employment.  AR 85.  The VE added that a high level of supervision

14    would be expected for the first thirty days of employment while the individual is

15    expected to be learning the tasks involved in the work.  AR 85.

16    ***ALJ's Decision***

17    On August 25, 2020, ALJ Kim issued an unfavorable decision.  AR 15–25.

18    Applying the five-step evaluation process, ALJ Kim found:

19

20

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

**Step one:** Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020, and the Plaintiff has not engaged in substantial gainful activity since August 10, 2017, the alleged onset date.  AR 17.

**Step two:** Plaintiff has the following severe impairments that are medically determinable and significantly limit her ability to perform basic work activities: obesity, lumbar spondylarthritis, PTSD, panic disorder, major depressive disorder, and somatoform disorder.  AR 17.  The ALJ further found that:

> The claimant has also exhibited symptoms of or been diagnosed with asthma, carpal tunnel syndrome, and fibromyalgia. The objective medical evidence does not indicate that these impairments have caused significant vocational limitations for at least 12 consecutive months, therefore they are deemed non-severe. I considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

AR 18 (internal citations to record omitted).

**Step three:** The ALJ concluded that Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). AR 18.  In reaching this conclusion, the ALJ found that Plaintiff's lumbar spondylarthritis does not meet the criteria of listing 1.04, addressing disorders of the spine, because there is no evidence of nerve root compression, limitation of motion of the spine, and motor loss (atrophy with associated muscle weakness or muscle

weakness) accompanied by sensory or reflex loss and positive straight leg raising tests (sitting and supine). AR 18. The ALJ also memorialized that, without a specific listing regarding obesity, he had evaluated the potential impairment from weight and Plaintiff's body state indicated by Plaintiff's testimony and the record as set forth in SSR 19-2p and in listings 1.00Q, 3.00I, and 4.00F. AR 18.

The ALJ also found that Plaintiff does not meet the "paragraph B" criteria of having at least one extreme or two marked limitations in a broad area of functioning to meet the relevant mental impairment listings 12.04, 12.06, 12.07, and 12.15. AR 18–19. Specifically, the ALJ found Plaintiff moderately limited in understanding, remembering, or applying information, noting that Plaintiff's Full Scale IQ score was 82, placing her in the low average range, and that Plaintiff was within normal limits on other relevant testing. AR 18. The ALJ found that Plaintiff is moderately limited in interacting with others, reasoning that Plaintiff's "ongoing depression and anxious mood reasonably calls for limiting her social interaction but she was able to be friendly and cooperative towards examiners." AR 18 (punctuation as in original) (citing AR 456–60, 1148–52, and 1156–60). With respect to concentrating, persisting, or maintaining pace, the ALJ found Plaintiff moderately limited, reasoning that although Plaintiff was able to perform simple arithmetic problems, follow a simple 3-step command, and complete multistep tasks, Plaintiff's ongoing anxious and depressed mood could reasonably affect her ability to concentrate. AR

19.  The ALJ found Plaintiff mildly limited in her ability to adapt or manage herself, finding that the record supported that Plaintiff is able to cook, clean, bathe and dress herself, drive, pay bills, take her medications, and shop, with only occasional lapses in personal hygiene.  AR 19.  The ALJ further found that, alternatively, the record does not support the presence of "paragraph C" criteria because there is nothing showing that Plaintiff relies, on an ongoing basis, on medical treatment, mental health therapy, psychosocial support, or a highly structured setting to diminish the symptoms and signs of a mental disorder and that, despite diminished symptoms and signs, the claimant has achieved only marginal adjustment.  AR 19.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff had the RFC to: perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except that she can never climb ladders, ropes or scaffolds. She can occasionally stoop, kneel, crouch, crawl, and climb flights of stairs. She must avoid unprotected heights. She can perform simple, routine, unskilled tasks with only occasional and simple changes; and work involving no interaction with the public and only occasional and superficial interaction with coworkers.  AR 19.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms "are not entirely consistent with the medical evidence and other evidence in the record" for several reasons that the ALJ discussed.  AR 20.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

**Step four:** The ALJ found that Plaintiff has past relevant work as a choreographer that Plaintiff is unable to perform at the performance level that the work was actually or generally performed. AR 24.

**Step five:** The ALJ found that Plaintiff has a high school education; was 46 years old, which is defined as a younger individual (age 18-49), on the alleged disability onset date; and that transferability of job skills is not material to the determination of disability because the application of the Medical-Vocational Guidelines to Plaintiff's case supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills. AR 24. The ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform considering her age, education, work experience, and RFC. AR 24–25. Specifically, the ALJ recounted that the VE identified the following representative occupations that Plaintiff would be able perform with the RFC: hotel/motel housekeeper, routing clerk, and mail room sorter. AR 25. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from August 10, 2017, through the date of the ALJ's decision. AR 25.

The Appeals Council denied review. AR 1.

/ / /

/ / /

/ / /

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

## LEGAL STANDARD

### *Standard of Review*

Congress has provided a limited scope of judicial review of the Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" also will be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

1    A decision supported by substantial evidence still will be set aside if the

2    proper legal standards were not applied in weighing the evidence and making a

3    decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir.

4    1988).  Thus, if there is substantial evidence to support the administrative findings,

5    or if there is conflicting evidence that will support a finding of either disability or

6    nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*,

7    812 F.2d 1226, 1229–30 (9th Cir. 1987).

8    ***Definition of Disability***

9    The Social Security Act defines "disability" as the "inability to engage in any

10   substantial gainful activity by reason of any medically determinable physical or

11   mental impairment which can be expected to result in death or which has lasted or

12   can be expected to last for a continuous period of not less than 12 months."  42

13   U.S.C. §§ 423(d)(1)(A).  The Act also provides that a claimant shall be determined

14   to be under a disability only if her impairments are of such severity that the claimant

15   is not only unable to do her previous work, but cannot, considering the claimant's

16   age, education, and work experiences, engage in any other substantial gainful work

17   which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A). Thus, the

18   definition of disability consists of both medical and vocational components.  *Edlund*

19   *v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

20   / / /

21

### *Sequential Evaluation Process*

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled.  20 C.F.R. §§ 416.920, 404.1520. Step one determines if he is engaged in substantial gainful activities.  If the claimant is engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that he has performed in the past.  If the

claimant can perform her previous work, the claimant is not disabled.  20 C.F.R. §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering her residual functional capacity and age, education, and past work experience.  20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in her previous occupation.  *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ISSUES ON APPEAL**

The parties' motions raise the following issues regarding the ALJ's decision:

1.      Did the ALJ erroneously discount medical opinion evidence?

2.      Did the ALJ erroneously reject Plaintiff's subjective symptom testimony?

3.      Did the ALJ erroneously formulate Plaintiff's RFC, resulting in harmful error at step five?

## DISCUSSION

### *Medical Opinion Evidence*

On appeal, Plaintiff asserts that she is disabled from both mental and physical conditions, namely PTSD, major depressive disorder, and degenerative disc problems in her back that have caused severe enough pain to require emergency room and chronic clinical care.  ECF No. 12 at 2.  Plaintiff argues that the ALJ erred in issuing his decision without further hearing or further testimony from any medical expert after receiving Plaintiff's post-hearing submission of Plaintiff's treatment psychiatric treatment records from October 2018 to June 2020 and a detailed statement from Plaintiff's treating psychiatrist, Laurie Zimmerman, M.D.  *Id.* at 5.  Plaintiff asserts that the longitudinal treatment record contains "sufficient signs and symptoms of the Plaintiff to support the estimate of function offered by Dr. Zimmerman" and directs the Court to treatment notes from Dr. Zimmerman from 2017 and 2018 recording Plaintiff's symptoms that Dr. Zimmerman observed.  ECF No. 15 at 3–5.

The Commissioner responds that the ALJ adequately accounted for Plaintiff's social anxiety by greatly limiting her social contacts at work in the RFC, but the further restrictions suggested by DSHS examiners and Dr. Zimmerman were "unsupported and not persuasive." ECF No. 13 at 11 (citing the ALJ's finding that the record showed that Plaintiff presented as "friendly, with good eye contact" and that Plaintiff was able to perform a diverse array of functions on testing in the presence of examiners without interruption from mental health symptoms). The Commissioner adds that "it is hard to imagine an 'opinion' that is less supported than that of Dr. Zimmerman" when "the total amount of information Dr. Zimmerman provides here is to circle two words, without any further analysis or indeed any notes at all, on a piece of paper provided by counsel." *Id.* at 7–8.

The regulations that took effect on March 27, 2017, provide a new framework for the ALJ's consideration of medical opinion evidence and require the ALJ to articulate how persuasive he finds all medical opinions in the record, without any hierarchy of weight afforded to different medical sources. *See* Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Instead, for each source of a medical opinion, the ALJ must consider several factors, including supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other

factors such as the source's familiarity with other evidence in the claim or an understanding of Social Security's disability program.  20 C.F.R. § 404.1520c(c).

Supportability and consistency are the "most important" factors, and the ALJ must articulate how he considered those factors in determining the persuasiveness of each medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(b)(2).  With respect to these two factors, the regulations provide that an opinion is more persuasive in relation to how "relevant the objective medical evidence and supporting explanations presented" and how "consistent" with evidence from other sources the medical opinion is.  20 C.F.R. § 404.1520c(c)(1).  The ALJ may explain how he considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record.  20 C.F.R. § 404.1520c(b)(2), (3).

Courts also must continue to consider whether the ALJ's finding is supported by substantial evidence.  *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Prior to issuance of the new regulations, the Ninth Circuit required an ALJ to provide clear and convincing reasons to reject an uncontradicted doctor's opinion and provide specific and legitimate reasons where the record contains a contradictory opinion.  *See Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir. 1983).  The Ninth Circuit has not yet ruled on whether its prior

caselaw requiring an ALJ to provide "clear and convincing" or "specific and legitimate reasons" in the analysis of medical opinions still applies. *See Thomas S. v. Comm'r of Soc. Sec.*, No. C20-5083 RAJ, 2020 U.S. Dist. LEXIS 166729, at *6 (W.D. Wash. Sep. 11, 2020). However, courts in this District, as well as other district courts within the Ninth Circuit, previously have concluded that the new regulations displace the prior Ninth Circuit caselaw. *See Emilie K. v. Saul*, No. 2:20-CV-00079-SMJ, 2021 U.S. Dist. LEXIS 43139, 2021 WL 864869, *3-4 (E.D. Wash. Mar. 8, 2021), reversed on other grounds, No. 21-35360, 2021 U.S. App. LEXIS 36540 (9th Cir. Dec. 10, 2021); *Timothy Mitchell B. v. Kijakazi*, 2021 U.S. Dist. LEXIS 151191, 2021 WL 3568209, at *5 (C.D. Cal. Aug. 11, 2021) (deferring to the new regulations); *but see Kathleen G. v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 210471, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) (applying the specific and legitimate standard under the new regulations).

The July 17, 2020 statement from Dr. Zimmerman consisted of Dr. Zimmerman circling "No" in response to Plaintiff's counsel's question "Is [Plaintiff] capable of maintaining focus and/or concentration for a 40 hour work week at a simple repetitive job station?"; and "Yes" in response to "Is [Plaintiff] likely to experience episodic flare-ups of anxiety or depression sufficient to cause absenteeism from work no more than 2 days a month?" AR 1540. Dr. Zimmerman

signed and dated the document in the margins but made no other notations.  AR

1540.

The ALJ addressed the statement from Dr. Zimmerman that Plaintiff

submitted after the hearing as follows:

> The opinion of Laurie Zimmerman, MD that the claimant was incapable
> of maintaining focus and concentration for a 40 work [sic] and would
> experience absences of 2 or more days per week is unsupported and not
> persuasive; Dr. Zimmerman did not offer any objective support for her
> opinions and the record shows while the claimant's ongoing depression
> and anxious mood reasonably calls for limiting her social interaction,
> as to memory and cognition, she was able to define 3 words correctly
> and was friendly, with good eye contact. She was able to immediately
> recall 3/3 words, and follow a simple 3-step command, as well as
> perform 2 multistep tasks. Memory was within normal limits. She was
> able to make change and perform simple arithmetic problems.

AR 23–24 (omitting internal citations to Dr. Zimmerman's July 2020 statement at

AR 1540; treatment records from Dr. Zimmerman at AR 912–1035; and a March

2018 psychological examination and evaluation for the Washington Department of

Social and Health Services from N.K. Marks, PhD. at AR 1148–51).

Dr. Zimmerman did not indicate what clinical findings supported her opinions

that Plaintiff cannot maintain focus for a 40-hour workweek and would likely have

unexcused absences from work "no more than 2 days a month."  *See* AR 1540.

Plaintiff is correct that the record evidences a lengthy treatment history with Dr.

Zimmerman.  *See* AR 1451–1539.  However, for instance, some of the treatment

records from the relevant period for her DIB and SSI applications reflect that

Plaintiff was stable while taking medications as prescribed; has reported that she enjoyed going out to eat with friends for Thanksgiving and decorating her living space with DIY projects; and that she "struggles with depression at times but does not allow herself to stay there."  AR 1452–54.  It is not for the ALJ or this Court to decipher what clinical findings underly a conclusory medical opinion such as the "No" and "Yes" statements from Dr. Zimmerman, and Plaintiff does not provide any authority supporting that the ALJ was required to speculate as to what clinical findings account for Dr. Zimmerman's opinions about Plaintiff's ability to work when supportability and consistency are the two most important factors under the new framework for assessing medical opinions.  *See* 20 C.F.R. § 404.1520c(b)(2).  Even prior to the new regulations, the Ninth Circuit has long held that an ALJ need not accept a treating physician's opinion that is "brief and conclusory in form with little in the way of clinical findings to support [its] conclusion."  *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986).

Moreover, Plaintiff cites the Court to no authority whatsoever to support that the ALJ's issuance of the opinion, after considering Plaintiff's post-hearing submissions, was error.  *See* ECF Nos. 12 and 15.  The Commissioner's resources are finite, and the Court identifies no requirement that an ALJ must reconvene a hearing to ask a medical expert to consider a medical opinion that the ALJ already has determined should be afforded little weight under the regulations.  Accordingly,

1   the Court denies Plaintiff's Motion for Summary Judgment on this ground and

2   grants summary judgment to the Commissioner with respect to the alleged erroneous

3   treatment of medical opinion evidence.

4   ***Subjective Symptom Testimony***

5       Plaintiff contends that the ALJ did not provide adequate or sufficient reasons

6   for discounting Plaintiff's statements regarding the severity of her symptoms

7   because the statements of treating sources support her description of her limitations.

8   ECF No. 12 at 16.  Plaintiff also contends that the ALJ erroneously relies on daily

9   activities evidence that do not consume a substantial part of Plaintiff's day and are

10  only made possible by Plaintiff living in a structured, supportive environment such

11  as Transitions.  *Id.* at 16–17 (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.

12  2001)).

13      The Commissioner responds that the ALJ incorporated serious limitations into

14  his RFC, including no contact with the public, only occasional contact with anyone,

15  and a wide range of physical limitations, and the ALJ cited substantial evidence to

16  support discounting Plaintiff's claims of even more extreme limitation.  ECF No. 13

17  at 9.

18      To reject a claimant's subjective complaints, the ALJ must provide "specific,

19  cogent reasons for the disbelief."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)

20  (internal citation omitted).  The ALJ "must identify what testimony is not credible

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23

1  and what evidence undermines the claimant's complaints." *Id*. Subjective symptom

2  evaluation is "not an examination of an individual's character," and an ALJ must

3  consider all of the evidence in an individual's record when evaluating the intensity

4  and persistence of symptoms. *See* SSR 16-3p, 2016 SSR LEXIS 4 (2016).

5       In deciding whether to accept a claimant's subjective pain or symptom

6  testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d

7  1273, 1281 (9th Cir. 1996). First, the ALJ must evaluate "whether the claimant has

8  presented objective medical evidence of an underlying impairment 'which could

9  reasonably be expected to produce the pain or other symptoms alleged.'"

10  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

11  *Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is met and there

12  is no evidence of malingering, "the ALJ can reject the claimant's testimony about

13  the severity of her symptoms only by offering specific, clear and convincing reasons

14  for doing so." *Smolen*, 80 F.3d at 1281.

15       The ALJ noted that Plaintiff's treatment records indicate that Plaintiff

16  demonstrated clear speech, logical thought process, normal perception, and normal

17  cognition in her interactions with treatment providers. AR 22, 928. Plaintiff

18  presented appropriately, made eye contact, and was "calm, alert, and cooperative."

19  AR 22, 1152–53, and 1326. The ALJ further cited treatment records into 2020

20  indicating that, although Plaintiff reported ongoing anxiety, upon exam Plaintiff

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

demonstrated full affect, logical thought processes, and normal thought content and cognition alongside an anxious mood.  AR 22, 1475.

Moreover, the Court notes that Plaintiff's recent treatment record indicates relatively conservative mental health treatment, with monthly meetings with a case manager and meetings with her treating psychiatrist every three months.  AR 1525.  In addition, Plaintiff has not always prioritized pursuing even that conservative treatment, as reflected by a treatment note stating "Ct cancelled her appt with Dr. Zimmerman today due to no transportation. Ct called staff at 909 am and expected staff to be able to transport. Staff reminded ct that she has people for people to transport her to medical appts unless she is going to ride the bus. Staff is not able to drop everything to transport ct without notice."  AR 1525 (as written in original) (further indicating that Plaintiff's appointments with Dr. Zimmerman are scheduled at 10:00 a.m.).

The Court finds that the ALJ provided sufficient, cogent reasons for discounting Plaintiff's claims of more extreme limitation than reflected in the RFC, and the ALJ's decision reflects that he thoroughly considered the record.  Therefore, the Court denies Plaintiff's Motion for Summary Judgment on this ground and grants summary judgment to the Commissioner with respect to the alleged erroneous treatment of Plaintiff's subjective symptom testimony.

/ / /

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

1

***Step Five Analysis***

2      Plaintiff contends the ALJ erred at step five because the finding that there are

3 jobs available that Plaintiff can perform was based on an incomplete RCF

4 assessment and hypothetical question to the VE.  ECF No. 12 at 18.  The ALJ's

5 hypothetical must be based on medical assumptions supported by substantial

6 evidence in the record that reflect all of a claimant's limitations.  *Osenbrook v. Apfel*,

7 240 F.3d 1157, 1165 (9th Cir. 2001).  The ALJ is not bound to accept as true the

8 restrictions presented in a hypothetical question propounded by a claimant's counsel.

9 *Osenbrook*, 240 F.3d at 1164. The ALJ may accept or reject these restrictions if they

10 are supported by substantial evidence, even when there is conflicting medical

11 evidence.  *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).

12      Plaintiff's argument assumes that the ALJ erred in considering unspecified

13 medical opinion evidence from treating psychiatrist Dr. Zimmerman and Plaintiff's

14 subjective symptom testimony.  As discussed above, the ALJ's assessment of Dr.

15 Zimmerman's opinion and Plaintiff's testimony was appropriate. Thus, the RFC and

16 hypothetical contained the limitations the ALJ found credible and supported by

17 substantial evidence in the record. The ALJ's reliance on testimony the VE gave in

18 response to the hypothetical, therefore, was proper. *See Bayliss v. Barnhart*, 427

19 F.3d 1211, 1217–18 (9th Cir. 2005).  The Court denies Plaintiff's Motion for

20 Summary Judgment on this final ground.

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 26

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

3. Judgment shall be entered for Defendant.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel, and **close this case**.

**DATED** March 17, 2022.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
Senior United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 27